

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

D-1 ALPHONSO BERRY, M.D.,
D-2 MARCUS JENKINS,
D-3 ELIZABETH JENKINS,

　　　　　　Defendants.
_____/

Case: 2:11-cr-20648
Judge: Murphy, Stephen J.
MJ: Whalen, R. Steven
Filed: 10-12-2011 At 04:51 PM
INDI: USA V. ALPHONSO BERRY M.D., ET AL

VIO:  18 U.S.C. § 1349
　　　 18 U.S.C. § 1347
　　　 18 U.S.C. § 2
　　　 18 U.S.C. § 982

## INDICTMENT

THE GRAND JURY CHARGES:

1. The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. The Medicare Program included coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B). Part B of the Medicare Program covered the costs of physicians' services and other ancillary services (including testing) not covered by Part A. The claims at issue in this indictment were submitted under Part B of the Medicare Program.

4. Wisconsin Physicians Service was the CMS contracted carrier for Medicare Part B in the state of Michigan. TrustSolutions, LLC, was the Program Safeguard Contractor for Medicare Part B in the state of Michigan.

5. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

6. Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN). When the medical provider rendered a service, the provider would submit a claim for reimbursement to the Medicare contractor/carrier that includes the PIN assigned to that medical provider. When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

7. Health care providers were provided with online access to Medicare manuals and services bulletins describing proper billing procedures, billing rules, and regulations. Providers could only submit claims to Medicare for services they rendered. Providers were required to maintain patient records to verify that the services were provided as described on the claim.

8. To receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing

2

the required information appropriately identifying the provider, beneficiary, and services rendered, among other things.

9. Quality Recreation and Rehabilitation, Inc. (QRR) was a Michigan corporation that purported to do business at 2641 West Grand Boulevard, Detroit, Michigan 48208. QRR's articles of incorporation were filed on or about February 4, 2004. QRR purported to provide psychotherapy services.

10. Procare Rehabilitation, Inc. (Procare) was a Michigan corporation that originally purported to do business at 2641 West Grand Boulevard, Detroit, Michigan 48208. Procare later moved and purported to do business at 8255 Second Avenue, Detroit, Michigan 48202. Procare's articles of incorporation were filed on October 14, 2008. Procare purported to provide psychotherapy services.

11. Jenkins Adult Foster Care, LLC (Jenkins AFC) was a Michigan limited liability company with a registered address of 27585 Arlington Court, Southfield, Michigan, 48076. Jenkins AFC owned and operated adult foster care facilities (AFCs). AFCs are residential facilities that provide 24-hour personal care, protection, and supervision for individuals who are developmentally disabled, mentally ill, physically handicapped, or aged, who cannot live alone but who do not need continuous nursing care.

### Defendants

12. Defendant ALPHONSO BERRY, M.D., a resident of Oakland County, Michigan, was a physician, licensed in the State of Michigan. Procare and QRR billed Medicare for psychotherapy services purportedly provided by BERRY.

13. Defendant MARCUS JENKINS, a resident of Oakland County, Michigan, operated, controlled, and directed operations at Procare, QRR, and Jenkins AFCs.

3

14. Defendant ELIZABETH JENKINS was married to MARCUS JENKINS. She is a resident of Oakland County, Michigan, and operated, controlled, and directed operations at Procare, QRR, and Jenkins AFCs.

## COUNT 1
### (18 U.S.C. § 1349 – Conspiracy to Commit Health Care Fraud)
### D-1 ALPHONSO BERRY, M.D.
### D-2 MARCUS JENKINS
### D-3 ELIZABETH JENKINS

15. Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference, as though fully set forth herein.

16. From in or around February 2004, and continuing through the present, the exact dates being unknown to the Grand Jury, in Wayne County, in the Eastern District of Michigan, and elsewhere, the defendants, ALPHONSO BERRY, M.D., MARCUS JENKINS, and ELIZABETH JENKINS, did willfully and knowingly combine, conspire, confederate and agree with each other and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and service.

### Purpose of the Conspiracy

17. It was a purpose of the conspiracy for defendants ALPHONSO BERRY, M.D., MARCUS JENKINS, ELIZABETH JENKINS and others to unlawfully enrich themselves by, among other things, (a) submitting false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds

4

from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

18. In or around February 2004, MARCUS JENKINS would incorporate QRR, and ELIZABETH JENKINS would execute QRR's Medicare provider enrollment applications and obtain Medicare provider numbers for QRR and clinicians working at QRR, including ALPHONSO BERRY, M.D.

19. MARCUS JENKINS and ELIZABETH JENKINS would control QRR's day-to-day operations.

20. MARCUS JENKINS, ELIZABETH JENKINS, and others would transport and cause the transport of Medicare beneficiaries living at AFCs owned and controlled by MARCUS JENKINS and ELIZABETH JENKINS to QRR.

21. MARCUS JENKINS and ELIZABETH JENKINS would cause QRR to submit claims to Medicare for psychotherapy services purportedly provided to Medicare beneficiaries. The psychotherapy services billed by QRR were not medically necessary and not provided.

22. MARCUS JENKINS and ELIZABETH JENKINS would own and control QRR's bank accounts and would receive proceeds of these Medicare billings through these bank accounts.

23. From in or around February 2004 through in or around September 2008, ALPHONSO BERRY, M.D., MARCUS JENKINS, ELIZABETH JENKINS and others would cause QRR to bill Medicare approximately $6 million for purported psychotherapy services that were not

5

medically necessary and not provided. Medicare paid QRR approximately $1.8 million on these claims.

24.  In or around September 2008, MARCUS JENKINS and ELIZABETH JENKINS would discontinue QRR's operations after QRR received notice from Medicare in or around June 2008 questioning QRR's billings and informing QRR that it was not providing legitimate psychotherapy services.

25.  In or around October 2008, MARCUS JENKINS and ELIZABETH JENKINS would cause an unindicted co-conspirator to incorporate Procare at the same address as QRR. The co-conspirator would execute a Medicare provider enrollment application for Procare, and would obtain Medicare provider numbers for Procare and related clinicians, including ALPHONSO BERRY, M.D.

26.  From in or around October 2008 through in or around October 2011, ALPHONZO BERRY, M.D., MARCUS JENKINS, ELIZABETH JENKINS and others would cause Procare to bill Medicare approximately $6.5 million for purported psychotherapy services that were not medically necessary and not provided. Medicare would pay Procare approximately $2.5 million on those claims.

27.  MARCUS JENKINS and ELIZABETH JENKINS would control Procare's day-to-day operations.

28.  MARCUS JENKINS, ELIZABETH JENKINS, and others would transport and cause the transport of Medicare beneficiaries living at AFCs owned and controlled by MARCUS JENKINS and ELIZABETH JENKINS to Procare.

29.  The unindicted co-conspirator and MARCUS JENKINS would own and control Procare's bank accounts. MARCUS JENKINS and ELIZABETH JENKINS would receive proceeds of Procare's Medicare billings through those accounts.

30. MARCUS JENKINS and ELIZABETH JENKINS would pay health care professionals, including ALPHONSO BERRY, M.D., to sign patient charts and progress notes for individual and group psychotherapy sessions purportedly provided at Procare that were not medically necessary and not performed.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-6

### (18 U.S.C. §§ 1347 and 2 – Health Care Fraud)
### D-1 ALPHONSO BERRY, M.D.
### D-2 MARCUS JENKINS
### D-3 ELIZABETH JENKINS

31. Paragraphs 1 through 14 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

32. On or about the dates enumerated below, in Wayne County, in the Eastern District of Michigan, and elsewhere, ALPHONSO BERRY, M.D., MARCUS JENKINS, and ELIZABETH JENKINS, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of Medicare, in connection with the delivery of and payment for health care benefits, items and services:

7

| Count | Medicare Beneficiary | On or about Claim Date | Description of Item Billed | Approximate Amount Billed to Medicare |
|---|---|---|---|---|
| 2 | M.R. | 2/10/10 | 90806 (45 to 50 minute individual psychotherapy session) | $100 |
| 3 | M.R. | 2/10/10 | 90853 (group psychotherapy session) | $50 |
| 4 | M.R. | 2/11/10 | 90853 (group psychotherapy session) | $50 |
| 5 | M.R. | 2/19/10 | 90806 (45 to 50 minute individual psychotherapy session) | $100 |
| 6 | M.R. | 2/19/10 | 90853 (group psychotherapy session) | $50 |

## CRIMINAL FORFEITURE

(18 U.S.C. §982)

**D-1 ALPHONSO BERRY, M.D.**
**D-2 MARCUS JENKINS**
**D-3 ELIZABETH JENKINS**

37. The allegations contained in Counts 1 through 6 are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, that is, ALPHONSO BERRY, M.D., MARCUS JENKINS, and ELIZABETH JENKINS have an interest in pursuant to the provisions of Title 18, United States Code, Sections 982(a)(1) and 982(a)(7).

38. Pursuant to Title 18, United States Code, Section 982(a)(7), upon conviction of ALPHONSO BERRY, M.D., MARCUS JENKINS, and ELIZABETH JENKINS, for any of the offenses charged in Counts 1 through 6 of this Indictment, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross

proceeds traceable to the commission of the health care fraud offense. If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount derived from such offense.

39.  If the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(7), as a result of any act or omission of the defendants:

i.  cannot be located upon the exercise of due diligence;

ii.  has been transferred or sold to, or deposited with, a third party;

iii.  has been placed beyond the jurisdiction of the Court;

iv.  has been substantially diminished in value; or

v.  has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek to forfeit any other property of the defendants up to the listed value.

All pursuant to Title 18, United States Code, Section 982(a)(7).

THIS IS A TRUE BILL.

/s GRAND JURY FOREPERSON
Grand Jury Foreperson

BARBARA L. MCQUADE
UNITED STATES ATTORNEY

/s WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-2548
Wayne.Pratt@usdoj.gov

9

/s GEJAA T. GOBENA
GEJAA T. GOBENA
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(202) 305-1310
(313) 226-0831
Gejaa.Gobena@usdoj.gov


/s WILLIAM G. KANELLIS
WILLIAM G. KANELLIS
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Third Floor
Washington, D.C. 20005
(202) 674-5661
William.Kanellis2@usdoj.gov


Dated:  October 12, 2011

Case: 2:11-cr-20648
Judge: Murphy, Stephen J.
MJ: Whalen, R. Steven
Filed: 10-12-2011 At 04:51 PM
INDI: USA V. ALPHONSO BERRY M.D., ET AL

| United States District Court Eastern District of Michigan | Criminal Case Cove |
|---|---|

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   [ ]

| Companion Case Information | Companion Case Number: N/A |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: N/A |
| ☐ Yes          X No | AUSA's Initials: |

Case Title: USA v. ALPHONSO BERRY, M.D., ET AL

County where offense occurred : Wayne County

Check One:         x Felony             ☐ Misdemeanor              ☐ Petty

      ____Indictment/____Information --- **no** prior complaint.
      _X_Indictment/____Information --- based upon prior complaint [Case number: 11-mj-30480 ]
      ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____    **Judge:** _____

  ☐   Original case was terminated; no additional charges or defendants.
  ☐   Corrects errors; no additional charges or defendants.
  ☐   Involves, for plea purposes, different charges or adds counts.
  ☐   Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

October 12, 2011                    /s GEJAA T. GOBENA
      Date                          Gejaa T. Gobena
                                    United States Trial Attorney
                                    211 W. Fort Street, Suite 2001
                                    Detroit, MI  48226-3277
                                    Phone:  (313) 226-0831
                                    Fax: (313) 226-5892
                                    E-Mail address: gejaa.gobena@usdoj.gov

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09