UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

             Plaintiff,

v.

ALPHONSO BERRY, M.D.,

             Defendant.

_____/

Case No. 11-cr-20648

Hon. Stephen J. Murphy III

Melissa Aoyagi
Trial Attorney
U.S. Dept. of Justice
Criminal Division, Fraud Section
1400 New York Avenue, NW
Washington, DC  20005
(202) 598-8019
melissa.aoyagi@usdoj.gov

Christopher A. Andreoff (P10193)
Jaffe, Raitt, Heuer & Weiss, P.C.
Attorney for Defendant
27777 Franklin Road, Ste. 2500
Southfield, MI  48034
(248) 351-3000
candreoff@jaffelaw.com

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Alphonso Berry, M.D. ("Defendant"), through his counsel,

Christopher A. Andreoff of Jaffe, Raitt, Heuer & Weiss, P.C., respectfully submits

this Memorandum regarding issues relevant to sentencing.

## I.      Introduction

Prior to commencement of the trial, on January 8, 2013, Defendant pled

guilty to Counts One through Six of the Indictment which charged Conspiracy to

Commit Health Care Fraud and Health Care Fraud in violation of 18 U.S.C. § 1347 and 1349.

The Probation Department determined the attempted fraud loss at $12,234,272.90, a two level enhancement for sophisticated means, a two level enhancement for abuse of position of private trust, a four level enhancement for organizer and leader of criminal activity for an Adjusted Offense Level of 34. Since Defendant plead guilty on the day of trial, be only received a two level decrease resulting in a guideline range of 121 to 151 months.

On May 1, 2013, Counsel for Defendant filed extensive written objections to the Presentence Investigation Report ("PSR") concluding that the Total Offense Level should read 20 with a guideline range of 33 to 41 months.

On May 27, 2016, Defendant, his undersigned counsel and Department of Justice Trial Attorney Melissa Aoyagi, in order to avoid an extensive evidentiary hearing, have resolved (subject to the Court's approval) all of Defendant's May 1, 2013 objections, including the calculations of the sentencing guidelines.

The parties joint position concerning the sentencing guidelines are as follows:

    A.    Base Offense Level (U.S.S.G. § 2B1.1) = 6

    B.    Specific Offense Characteristics involving a billable amount of $6,843,450, and paid amount of $3,113.502.00 (U.S.S.G. § 2B1.1(b)(1)(J) = 18

2

C.      Sophisticated Means (U.S.S.G. § 2B1.1(b)(9)(c) = 2

D.      Abuse of Private Trust (U.S.S.G. § 3B1.3) = 2

E.      Adjusted Offense Level = 28

F.      Acceptance of Responsibility (U.S.S.G. § 3E1.1(a) = -2

G.      Total Offense Level = 26 (guideline range of 63 to 78 months).

Based upon Defendant's substantial cooperation, it is anticipated that the Government will file a Motion for Downward Departure under U.S.S.G. § 5K1.1.

## II.      Sentencing Factors

The factors set forth in 18 U.S.C. § 3553(a) that guide a judge in determining the appropriate sentence since the Supreme Court's landmark decision in *United States v. Booker,* 543 U.S. 220 (2005) are certainly well known to the Court, as is the requirement that the Court "impose a sentence sufficient, but not greater than necessary, to comply with" those purposes. Familiar, too, is the Supreme Court's admonition in *Gall v. United States,* 522 U.S. 38 (2007), that in applying these factors, a sentencing judge "Make an individualized assessment based on the facts presented."

Although the promulgation of the Guidelines was an attempt by Congress to promote uniformity in sentencing, *Booker* and its progeny, as well as the factors set forth in 18 U.S.C. § 3553(a) make clear that sentencing involves more than a formulaic response to crime and punishment, and requires the sentencing court to

3

3454440.v1

consider offender characteristics that go beyond the simple issue of criminal history, the only Guideline factor that speaks to the characteristics of the offender, rather than of the offense.

Indeed, in *United States. v. Gall,* 522 U.S. 38, 128 S.Ct. 586, 596 (2007), the Supreme Court specifically stated that a formulaic approach to sentencing is inappropriate:

> On the other side of the equation, the mathematical approach assumes the existence of some ascertainable method of assigning percentages to various justifications. Does withdrawal from a conspiracy justify more or less than, say, a 30% reduction? Does it matter that the withdrawal occurred several years ago? Is it relevant that the withdrawal was motivated by a decision to discontinue the use of drugs and to lead a better life? What percentage, if any, should be assigned to evidence that a defendant poses no future threat to society, or to evidence that innocent third parties are dependent on him? The formula is a classic example of attempting to measure an inventory of apples by counting oranges.

The Supreme Court also made clear that in applying the §3353(a) factors, a sentencing judge "must make an individualized assessment based on the facts presented" by the case, without giving presumptive weight to the Guidelines sentencing range:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines ranges. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a

4

party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented.

*Id* at 596-597.

Such an approach, which give individualized consideration to *all* of the sentencing factors identified by the statute is not only commanded by the *Booker* holding, but is logical as well, in view of the degree to which the Guidelines are driven principally by the nature of the offense conduct, and only minimally by the characteristics of the particular offender and his or her life and character. As the Supreme Court noted in *Gall*, quoting its earlier opinion in *Koon v. United States,* 518 U.S. 81, 113 (1996), "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id* at 598.

Because Defendant has accepted responsibility, the only question before this Court is what sentence is "sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)." Under § 3553(a) the Court, in addition to the Guideline range, should consider the following factors:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed –

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

* * *

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(7) the need to provide restitution to any victims of the offense.

1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.**

A. <u>Nature of the Offense.</u>

As reflected in the Indictment and in the Presentence Report ("PSR"), the charged conspiracy, which involved Defendant, allegedly ran from 2007 to 2011. Defendant's independent medical practice B&M Visiting Doctors, who had no ownership interest in Quality Recreation & Rehabilitation LLC ("QRR") and ProCare Rehabilitation("ProCare") was contracted in 2007 by those entities to be a Medical Director.

From 2007 to 2010, B&M Visiting Doctors periodically received a total of $70,000 in checks over those four (4) years for his role as Medical Director. (See **Exhibit A**). This was Defendant's only direct income from QRR or ProCare.

As Defendant informed the Court during his plea proceeding on January 8, 2013, he permitted QRR in 2007 to use his name as a physician to acquire a Medicare provider identification number (PIN), which (without his knowledge) allowed the adult care center to bill Medicare for psychotherapy and other medical services which may or may not have been provided to the patients.

Defendant was <u>never</u> an employee nor did he own or control either company, and did not directly or indirectly bill Medicare for any services he performed at either facility. Defendant never received a copy of any Explanation of Benefits form for any Medicare psychotherapy billings that was sent by QRR or ProCare, and consequently, was never fully aware of the entire scope or amount of billings submitted by either company for psychotherapy services. A review of all of the patient files does not reflect any notes by Defendant with any patient for psychotherapy services.

However, Defendant improperly and negligently signed off on patient Progress Notes wherein he reviewed the notes prepared by licensed healthcare professionals who had purportedly performed services for patients. He failed to use due diligence in verifying the service to the patients.

This conduct forms the basis for his guilty pleas to the counts in the indictment. Therefore, he is liable for $3,113.275.59 in restitution.

B.    The History and Characteristics of Defendant.

Defendant is 55 years old and was born in Marion, South Carolina. For the last twenty-eight (28) years, he has worked and resided in the Detroit, Michigan area. In 1979, Defendant graduated second in his class from Marion High School in Marion, South Carolina where he became a member of the National Honor Society. In 1983, he obtained a Bachelor of Science degree from the College of Charleston in Charleston, South Carolina. In 1989, he graduated with a Doctor of Medicine Degree from Howard University in Washington, D.C.

Defendant then served as a resident in internal medicine at Wayne State University School of Medicine and the Detroit Medical Center. Without listing all of Defendant's positions and affiliations, a copy of his Curriculum Vitae is attached as **Exhibit B**. From 2014 to early 2016, he worked as a driver for ARK Medical, and for the last three (3) months as a driver for First Care Solutions.

Defendant has <u>not</u> renewed his Michigan medical license, and has not practiced as a physician for nearly two years. He has been married for 24 years to a physician, has one daughter who just graduated from New York University, and two adult step-sons. Every weekend, Defendant cares for his mother-in-law, Betty Thrasher who suffers from advanced dementia.

8

A review of Defendant's assets and liabilities in 2013 reflect little to no net worth. Now three (3) years later, his liabilities greatly exceed his assets. As reflected in the PSR, Defendant has no previous criminal history.

**2.      The "Need for the Sentence" to Comport with the Traditional Purposes of Punishment.**

A.      Retribution.

The consequences arising from this conviction are extremely severe since it may result in some form of punishment or incarceration, and possible separation from his family. Moreover, Defendant's conviction has resulted in the loss of his medical license.

B.      Deterrence.

Defendant's indictment, guilty pleas and this Court's imposition of a sentence should serve as a sufficient deterrence to others who might engage in similar conduct.

C.      Incarceration.

There is simply no reason to believe that it is necessary to imprison Defendant for a period of time in order to protect society. There is no evidence in this case that Defendant was an organizer, manager or supervisor involved in this fraud offense. Unfortunately, Defendant made a horrible decision to participate in this conspiracy. What he did was wrong, but his role pales in comparison to the actions of the other Co-Defendants in this case.

3454440.v1

D.    Rehabilitation.

In *Tapia v. United States*, 564 U.S. 319, 131 S.Ct. 2382 (2011), the United States Supreme Court held that 18 U.S.C. § 3582(a) precludes a sentencing court from imposing or lengthening a prison term to promote an offender's rehabilitation.

## 3.    The Kinds of Sentences Available.

Defendant recognizes that a sentence of imprisonment may be imposed. The only question is what sentence is sufficient but not greater than necessary to fulfill the purposes of 18 U.S.C. § 3553(a).

Defendant had no proprietary interest in nor derived any profits from the operation of QRR or ProCare, or from this illegal scheme except the $70,000 in fees as Medical Director. Moreover, there is no evidence to suggest that his involvement preceded this time period, was more extensive, or that he ever profited before or after his affiliation. What he did was wrong, and he has accepted responsibility for his actions.

## III.    Sentencing Guidelines

As noted earlier in this Memorandum, the parties have resolved all of counsel for Defendant's May 1, 2013 objections to the PSR, thereby not requiring this Court to hold an evidentiary hearing which would involve the issues of certain

10

3454440.v1

factual statements in the PSR, the amount of loss, and Defendant's role in the offense enhancement.

Consequently, counsel for Defendant and the Government are requesting that the Court find that Defendant's Total Offense Level should read 26, a Criminal History Category I, and a guideline range of **63** to **78** months.

## 1.     Cooperation.

Since his plea proceeding on January 8, 2013, Defendant voluntarily agreed to be interviewed by the federal agents and Department of Justice attorneys, whereby he readily admitted his involvement and that of others.  Subsequently, he agreed to be debriefed on many occasions by government counsel or federal agents regarding the involvement of others not only in the charged offense, but other matters under investigation.  This process has taken over three (3) years.

Defendant also spent approximately a hundred or more hours assisting the government by reviewing patient records and files which led to the indictment, prosecution and successful conviction of three people who were not charged in the pending case.  Finally, he has also agreed to testify against others if called by the government in the prosecution of others, which may occur subsequent to any sentencing proceeding..

3454440.v1

## IV.    Conclusion

On behalf of my client, I am requesting that the Court grant the Government's Motion for Downward Departure under U.S.S.G §5K1.1 and consider a substantial downward variance from the sentencing guideline range, and impose a sentence that is sufficient, but not greater than necessary, under 18 U.S.C. 3553(a).

Defendant, who is 55 years old, made a tragic, life changing mistake becoming involved in this conspiracy. He has damaged his reputation, lost his medical license thereby jeopardizing his ability to provide for himself and his family, and has been under considerable stress and anxiety concerning what this Court's sentence will be some three (3) years after his guilty pleas. Most importantly, any sentence that will be imposed will severely impact his immediate family, and cause considerable financial hardship on them.

This Court has received forty-seven (47) character letters which speak to his family background, his nearly thirty (30) years of contribution and service to patients who resided in the City of Detroit, his caring for the poor and disadvantaged who struggle daily to get adequate medical care, and his longtime friendship and commitment to others.

Defendant is a deeply religious and caring person who has attempted to show the Court that he will not violate the law again, but continue to strive to be a

12

3454440.v1

law abiding citizen in this community. He has had a distinguished career as a physician, and his involvement with QRR and ProCare some five or more years ago has caused him to lose his career.

Consequently, I am requesting that the Court impose a fair and just sentence, and if incarceration is contemplated that it not exceed 18 months, with an appropriate period of supervised release to ensure Defendant's future compliance with the law.

Respectfully submitted,

/s/ Christopher A. Andreoff
Christopher A. Andreoff (P10193)
Jaffe, Raitt, Heuer & Weiss, P.C.
Attorney for Defendant
27777 Franklin Road, Ste. 2500
Southfield, MI 48034
(248) 351-3000
Dated: June 3, 2016    candreoff@jaffelaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2016, I electronically filed the foregoing Defendant's Sentencing Memorandum with the Clerk of the Court using the ECF System which will send notification of such filing to all counsel of record.

/s/ Christopher A. Andreoff
Christopher A. Andreoff (P10193)
Jaffe, Raitt, Heuer & Weiss, P.C.
27777 Franklin Road, Ste. 2500
Southfield, MI 48034
(248) 351-3000
Dated: June 3, 2016    candreoff@jaffelaw.com

3454440.v1